**IN THE UNITED STATES DISTRICT COURT FOR
DISTRICT OF KANSAS**

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br><br>Plaintiff, )<br><br>v. )<br><br>MAGELLAN PIPELINE COMPANY, L.P )<br><br>Defendant. )<br>_____) | Civil Action No. ___08-CV-2272 JAR/DJW |

## COMPLAINT

The United States of America, by the authority of the Attorney General of the United States and through the undersigned attorneys, acting at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), files this Complaint and alleges as follows:

### I.  NATURE OF THE ACTION

1.      This civil action asserts claims for penalties and injunctive relief under the Clean Water Act ("CWA"), 33 U.S.C. § 1251 *et. seq.* against Magellan Pipeline Company, L.P. ("Magellan") with respect to eleven discharges of petroleum products in six midwestern states from a pipeline it owns and operates and its failure to comply with regulations issued under Section 113(j) of the CWA at pipeline terminal facilities in Coralville, Iowa and Roca, Nebraska.

### II.  JURISDICTION, AUTHORITY AND VENUE

2.      This Court has jurisdiction over the subject matter of the United States' claims in this action pursuant to 28 U.S.C. §§ 1331, 1345, and 1355, and Sections 309(b), 311(b)(7)(E) and 311(n) of the CWA, 33 U.S.C. §§ 1319(b), 1321(b)(7)(E) and 1321(n).  The Court has personal jurisdiction over the Parties.

-1-

3.     Authority to bring this action is vested in the United States Department of Justice by Section 506 of the CWA, 33 U.S.C. § 1366, and 28 U.S.C. §§ 516 and 519.

4.     Venue lies in this District pursuant to 28 U.S.C. §§ 1391(b) and ( c), and 1395(a), because six of the discharges alleged below occurred in the State of Kansas and because Magellan conducts business in this judicial district.  See also 33 U.S.C. § 1321(b)(7)(E).

5.     Notice of commencement of this action is being given to the States of Kansas, Iowa, Nebraska, Minnesota, Arkansas and Illinois pursuant to Section 309(b) of the CWA, 33 U.S.C. § 1319(b).

### III.  DEFENDANT

6.     Defendant Magellan is a limited partnership organized and existing under the laws of the State of Delaware and licensed to do business in Kansas.  Magellan Pipeline Company, L.P. was formerly named Williams Pipeline Company, L.P. until September 11, 2003 when its name was changed to Magellan.

### IV.  STATUTORY BACKGROUND

7.     Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant, including oil, by any person, except as authorized by and in compliance with other sections of the CWA.  Section 502(12) of the CWA, 33 U.S.C. § 1362(12), defines "discharge of a pollutant" to include "any addition of any pollutant to navigable waters from any point source."

8.     Section 309(a) of the CWA, 33 U.S.C. § 1319(a), authorizes the Administrator of the EPA to, inter alia, issue compliance orders for discharges of pollutants prohibited under Section 301(a) of the CWA, 33 U.S.C. § 1311(a).   Section 309(b) of the CWA, 33 U.S.C. § 1319(b), authorizes the Administrator of the EPA to commence a civil action for appropriate relief, including a permanent or temporary injunction, for any violation for which the Administrator is authorized to issue a compliance order under Section 309(a).

-2-

9.      Section 311(b)(3) of the CWA, 33 U.S.C. § 1321(b)(3), prohibits the discharge of oil into or upon the navigable waters of the United States and adjoining shorelines in such quantities as the President determines may be harmful to the public health or welfare or the environment of the United States.  Section 311(a)(2) of the CWA defines "discharge" to include "any spilling, leaking, pumping, pouring, emitting, emptying or dumping . . . ."  33 U.S.C. § 1321(a)(2).

10.     Pursuant to Section 311(b)(4) of the CWA, 33 U.S.C. § 1321(b)(4), EPA, has determined by regulation that the quantities of oil that may be harmful to the public health or welfare or the environment of the United States include discharges of oil that violate applicable water quality standards, or cause a film or sheen upon or discoloration of the surface of the water or adjoining shorelines, or cause a sludge or emulsion to be deposited beneath the surface of the water or upon adjoining shorelines.  40 C.F.R. § 110.3.

11.     Section 311(b)(7) of the CWA, 33 U.S.C. § 1321(b)(7), provides that:

(A) Discharge, generally
Any person who is the owner, operator, or person in charge of any vessel, onshore facility, or offshore facility from which oil or a hazardous substance is discharged in violation of [Section 311(b)(3) of the CWA], shall be subject to a civil penalty in an amount up to $25,000 per day of violation or an amount up to $1,000 per barrel of oil or unit of reportable quantity of hazardous substances discharged.

Pursuant to the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461 note; Pub. L. 101-410), as amended by the Debt Collection Improvement Act of 1996 (31 U.S.C. § 3701 note; Pub. L. 104-134), and 40 C.F.R. § 19.4, the above amounts have been adjusted upwards for inflation.  For discharges occurring between January 30, 1997 and the present, the per barrel amount has been increased to $1,100.

12.     Section 311(j) of the CWA authorizes EPA to promulgate regulations on establishing methods and procedures for removal of discharged oil, establishing the criteria for the development of oil and hazardous substance removal contingency plans, and establishing procedures, methods and equipment to prevent discharges of oil from onshore facilities.  EPA has promulgated such regulations setting forth what are known as Spill Prevention Control and

Countermeasure (SPCC) requirements which are codified at 40 C.F.R. Part 112 ("SPCC Regulations").

13.     The SPCC regulations require all onshore facilities engaged in storing or distributing oil or oil products with an above ground storage capacity greater than 1,320 gallons from which a discharge of oil could reasonably be expected to discharge oil into or upon navigable waters of the United States or adjoining shorelines to prepare and implement an SPCC plan that adheres to certain requirements detailed in the regulations.  See 40 C.F.R. §§ 112.1, 112.3.

14.     Section 311(b)(7)(C) provides that any person who fails to comply with any regulation issued under Section 311(j) of the CWA shall be subject to a civil penalty in an amount up to $25,000 per day of violation.  This penalty amount was adjusted upwards for inflation by the Federal Civil Penalties Inflation Adjustment Act of 1990 (28 U.S.C. § 2461) and Debt Collection Improvement Act of 1996 (31 U.S.C. § 3701), and 40 C.F.R. § 19.4 to $27,500 per day for each violation occurring between January 30, 1997 and March 15, 2004 and to $32,500 per day for each violation thereafter.

## V.  GENERAL ALLEGATIONS

15.     Magellan is the owner and operator of a 6700 mile long petroleum pipeline network and 39 terminal facilities in the states of North Dakota, South Dakota, Minnesota, Nebraska, Iowa, Wisconsin, Illinois, Missouri, Arkansas, Kansas, and Oklahoma (hereinafter referred to as the "Pipeline").  The Pipeline transports petroleum products including gasoline, diesel and aviation fuel, from refineries through interconnections with other interstate pipelines to retail gasoline stations, truck stops, railroads, airports and other end users.

16.     On or about March 24, 1999, a bulldozer operated by a third party ruptured the Pipeline causing the discharge of approximately 2693 barrels of regular unleaded gasoline from the Pipeline in Will County, Illinois in or near the town of Braidwood.

17.     On or about May 10, 1999, a longitudinal seam in the Pipeline ruptured resulting in the discharge of approximately 5,208 barrels of diesel fuel from the Pipeline in or near Atchison, Kansas.

18.     On or about May 24, 1999, approximately seventy-three barrels of diesel fuel were discharged through a pinhole leak in the Pipeline in or near Hartland, Iowa.

19.     On August 17, 1999, farming activity breached the Pipeline causing the discharge of approximately 316 barrels of gasoline in or near Humbolt, Kansas.

20.     On February 25, 2000, a transfer pipe between two storage tanks at the Pipeline's terminal facility in Coralville, Iowa ruptured and discharged approximately 745 barrels of petroleum products.

21.     On April 25, 2000, a farmer deep tilling a field damaged the Pipeline causing the discharge of approximately 50 barrels of gasoline in or near Alexandria, Minnesota.

22.     On March 21, 2002,  an excavation contractor pierced the Pipeline causing the discharge of approximately seventy-three barrels of gasoline from the Pipeline in or near Fort Smith, Arkansas.

23.      On July 18, 2002, corrosion in the Pipeline caused a break resulting in the discharge of 541 barrels of fuel oil from the Pipeline in or near LaHarpe, Kansas.

24.     On October 6, 2003, a weld failure resulted in the discharge of approximately 700 barrels of diesel fuel from the Pipeline in or near Shawnee, Kansas, a suburb of Kansas City.

25.     On May 23, 2005, corrosion caused a break in the Pipeline resulting in the discharge of 2,830 barrels of gasoline from the Pipeline in or near Kansas City, KS.

26.     On January 13, 2006, corrosion caused a break in the Pipeline resulting in the discharge of 3215 barrels of gasoline and jet fuel from the Pipeline in or near Independence Kansas.

27.     Magellan is the owner and operator of a terminal facility for the Pipeline located in Coralville, Iowa.  The Coralville terminal is subject to the SPCC regulations because it is a

facility that stores and distributes oil with a capacity above ground greater than 1,320 gallons and a spill from that terminal could reasonably be expected to result in a discharge of oil to navigable waters and adjoining shorelines.

28.     On September 25, 2003, EPA conducted an inspection of Magellan's Coralville, Iowa terminal.  In the inspection, EPA determined that Magellan had not complied with the SPCC regulations promulgated at 40 C.F.R. § 112 et seq. under Section 311(j) of the CWA in several respects including but not limited to:

      a.     management approval of the SPCC plan was not provided as required by 40 C.F.R. § 112.7;

      b.     the SPCC plan did not adequately predict the direction, rate of flow, and total quantity of oil which could be discharged from the facility as a result of each potential type of major equipment failure as required by 40 C.F.R. § 112.7(b);

      c.     the SPCC plan's description of the facility did not include maps that show above ground piping as required by 40 C.F.R. § 112.7(a)(3);

      d.     the SPCC plan did not indicate and require that all tanks at the facility were, as required by 40 C.F.R. § 112.8(c)(8), fail-safe engineered to avoid spills;

      e.     the SPCC plan did not, as required by 40 C.F.R. § 112.7(f)(2), identify a person at the facility who is accountable for discharge prevention; and

      f.     the SPCC plan did not, as required by 40 C.F.R. § 112.8(b)(3)-(4), indicate and require that all drainage systems from undiked areas flow into ponds, lagoons or catchment basins, designed to retain oil or return it to the facility or that the final discharge of all in-plant ditches be equipped with a diversion system that could in the event of an uncontrolled spill, return the oil to the plant.

29.     Magellan is the owner and operator of a bulk storage terminal in Roca, Nebraska. The Roca terminal has a capacity of 3,740,250 gallons and spill from the Roca terminal could reasonably be expected to result in the discharge of oil to navigable waters and adjoining shorelines.

30.     EPA inspected the Roca Terminal on July 26, 2006 at which time it noted that Magellan was not in compliance with SPCC regulations with respect to the SPCC plan for the terminal because documentation of management approval to implement the plan was not provided within the SPCC plan (40 C.F.R. § 112.7) and secondary containment for piping was not present, or alternatively, the impracticability for containment was not demonstrated by the facility's SPCC plan (40 C.F.R. § 112.7(c)-(d)).

## VI.  CLAIMS

### First Claim for Relief:

### Civil Penalties under Section 311(b) of the CWA for the Braidwood, Illinois Spill

31.     Paragraphs 1 through 30 are realleged and incorporated herein by reference.

32.     On or about March 24, 1999, a discharge of oil occurred  from the Pipeline into the navigable waters and/or adjoining shorelines in or near Braidwood, Illinois in violation of Section 311(b)(3) of the CWA, 33 U.S.C. § 1321(b)(3).

33.     Magellan, as the owner and operator of the Pipeline at the time of the discharge in Braidwood, Illinois, is liable for a civil penalty of up to $1,100 per barrel discharged, pursuant to Section 311(b)(7)(A) of the CWA, 33 U.S.C. § 1321(b)(7)(A), and 40 C.F.R. § 19.4.

### Second Claim for Relief:

### Civil Penalties under Section 311(b) of the CWA for the Atchison, Kansas Spill

34.     Paragraphs 1 through 33 are realleged and incorporated herein by reference.

35.     On or about May 10, 1999, a discharge of oil occurred from the Pipeline into the navigable waters and/or adjoining shorelines in or near Atchison, Kansas in violation of Section 311(b)(3) of the CWA, 33 U.S.C. § 1321(b)(3).

36.     Magellan, as the owner and operator of the Pipeline at the time of the discharge in Atchison, Kansas, is liable for a civil penalty of up to $1,100 per barrel discharged, pursuant to Section 311(b)(7)(A) of the CWA, 33 U.S.C. § 1321(b)(7)(A), and 40 C.F.R. § 19.4.

### Third Claim for Relief:

### Civil Penalties under Section 311(b) of the CWA for Hartland, Iowa Spill

37.     Paragraphs 1 through 36 are realleged and incorporated herein by reference.

38.     On or about May 24, 1999, a discharge of oil occurred from the Pipeline into the navigable waters and/or adjoining shorelines in or near Hartland, Iowa in violation of Section 311(b)(3) of the CWA, 33 U.S.C. § 1321(b)(3).

39.     Magellan, as the owner and operator of the Pipeline at the time of the discharge in Hartland, Iowa, is liable for a civil penalty of up to $1,100 per barrel discharged, pursuant to Section 311(b)(7)(A) of the CWA, 33 U.S.C. § 1321(b)(7)(A), and 40 C.F.R. § 19.4.

### Fourth Claim for Relief:

### Civil Penalties under Section 311(b) of the CWA for the Humbolt, Kansas Spill

40.     Paragraphs 1 through 39 are realleged and incorporated herein by reference.

41.     On or about August 17, 1999, a discharge of oil occurred from the Pipeline into the navigable waters and/or adjoining shorelines in or near Humbolt, Kansas in violation of Section 311(b)(3) of the CWA, 33 U.S.C. § 1321(b)(3).

42.     Magellan, as the owner and operator of the Pipeline at the time of the discharge in Humboldt, Kansas, is liable for a civil penalty of up to $1,100 per barrel discharged, pursuant to Section 311(b)(7)(A) of the CWA, 33 U.S.C. § 1321(b)(7)(A), and 40 C.F.R. § 19.4.

**Fifth Claim for Relief:**

**Civil Penalties under Section 311(b) of the CWA for Coralville, Iowa Spill**

43.    Paragraphs 1 through 42 are realleged and incorporated herein by reference.

44.    On or about February 5, 2000, a discharge of oil occurred from the Pipeline at a terminal facility into the navigable waters and/or adjoining shorelines in or near Coralville, Iowa in violation of Section 311(b)(3) of the CWA, 33 U.S.C. § 1321(b)(3).

45.    Magellan, as the owner and operator of the Pipeline at the time of the discharge in Coralville, Iowa, is liable for a civil penalty of up to $1,100 per barrel discharged, pursuant to Section 311(b)(7)(A) of the CWA, 33 U.S.C. § 1321(b)(7)(A), and 40 C.F.R. § 19.4.

**Sixth Claim for Relief:**

**Civil Penalties under Section 311(b) of the CWA for Alexandria, Minnesota Spill**

46.    Paragraphs 1 through 45 are realleged and incorporated herein by reference.

47.    On or about April 25, 2000, a discharge of oil occurred from the Pipeline into the navigable waters and/or adjoining shorelines in or near Alexandria, Minnesota in violation of Section 311(b)(3) of the CWA, 33 U.S.C. § 1321(b)(3).

48.    Magellan, as the owner and operator of the Pipeline at the time of the discharge in Alexandria, Minnesota, is liable for a civil penalty of up to $1,100 per barrel discharged, pursuant to Section 311(b)(7)(A) of the CWA, 33 U.S.C. § 1321(b)(7)(A), and 40 C.F.R. § 19.4.

**Seventh Claim for Relief:**

**Civil Penalties under Section 311(b) of the CWA for Fort Smith, Arkansas Spill**

49.    Paragraphs 1 through 48 are realleged and incorporated herein by reference.

50.    On or about March 21, 2002, a discharge of oil occurred from the Pipeline into the navigable waters and/or adjoining shorelines in or near Fort Smith, Arkansas in violation of Section 311(b)(3) of the CWA, 33 U.S.C. § 1321(b)(3).

51.     Magellan, as the owner and operator of the Pipeline at the time of the discharge in Fort Smith, Arkansas, is liable for a civil penalty of up to $1,100 per barrel discharged, pursuant to Section 311(b)(7)(A) of the CWA, 33 U.S.C. § 1321(b)(7)(A), and 40 C.F.R. § 19.4.

## Eighth Claim for Relief:

## Civil Penalties under Section 311(b) of the CWA for LaHarpe, Kansas Spill

52.     Paragraphs 1 through 51 are realleged and incorporated herein by reference.

53.     On or about July 18, 2002, a discharge of oil occurred  from the Pipeline into the navigable waters and/or adjoining shorelines in or near LeHarpe, Kansas in violation of Section 311(b)(3) of the CWA, 33 U.S.C. § 1321(b)(3).

54.     Magellan, as the owner and operator of the Pipeline at the time of the discharge in LeHarpe, Kansas, is liable for a civil penalty of up to $1,100 per barrel discharged, pursuant to Section 311(b)(7)(A) of the CWA, 33 U.S.C. § 1321(b)(7)(A), and 40 C.F.R. § 19.4.

## Ninth Claim for Relief:

## Civil Penalties under Section 311(b) of the CWA for the Shawnee, Kansas Spill

55.     Paragraphs 1 through 54 are realleged and incorporated herein by reference.

56.     On or about October 6, 2003, a discharge of oil occurred  from the Pipeline into the navigable waters and/or adjoining shorelines in or near Shawnee, Kansas in violation of Section 311(b)(3) of the CWA, 33 U.S.C. § 1321(b)(3).

57.     Magellan, as the owner and operator of the Pipeline at the time of the discharge in Shawnee, Kansas, is liable for a civil penalty of up to $1,100 per barrel discharged, pursuant to Section 311(b)(7)(A) of the CWA, 33 U.S.C. § 1321(b)(7)(A), and 40 C.F.R. § 19.4.

## Tenth Claim for Relief:

## Civil Penalties under Section 311(b) of the CWA for the Kansas City, Kansas Spill

58.     Paragraphs 1 through 57 are realleged and incorporated herein by reference.

59.     On or about May 25, 2005, a discharge of oil occurred  from the Pipeline into the navigable waters and/or adjoining shorelines in or near Kansas City, Kansas in violation of Section 311(b)(3) of the CWA, 33 U.S.C. § 1321(b)(3).

60.     Magellan, as the owner and operator of the Pipeline at the time of the discharge in Kansas City, Kansas, is liable for a civil penalty of up to $1,100 per barrel discharged, pursuant to Section 311(b)(7)(A) of the CWA, 33 U.S.C. § 1321(b)(7)(A), and 40 C.F.R. § 19.4.

**Eleventh Claim for Relief:**

**Civil Penalties under Section 311(b) of the CWA for the Independence, Kansas Spill**

61.     Paragraphs 1 through 60 are realleged and incorporated herein by reference.

62.     On or about January 13, 2006, a discharge of oil occurred  from the Pipeline into the navigable waters and/or adjoining shorelines in or near Independence, Kansas in violation of Section 311(b)(3) of the CWA, 33 U.S.C. § 1321(b)(3).

63.     Magellan, as the owner and operator of the Pipeline at the time of the discharge in Independence, Kansas, is liable for a civil penalty of up to $1,100 per barrel discharged, pursuant to Section 311(b)(7)(A) of the CWA, 33 U.S.C. § 1321(b)(7)(A), and 40 C.F.R. § 19.4.

**Twelfth Claim for Relief:**

**Civil Penalties under Section 311(b) of the CWA for Violations of SPCC Regulations at the Coralville, Iowa Terminal Facility**

64.     Paragraphs 1 through 63 are realleged and incorporated herein by reference.

65.     Magellan is the owner and operator of a terminal facility for the Pipeline located in Coralville, Iowa.

66.     The Coralville terminal is a facility that stores and distributes oil with a capacity above ground greater than 1,320 gallons and a spill from that terminal can reasonably be expected to result in a discharge of oil to navigable waters and adjoining shorelines.

-11-

67.     On September 25, 2003, EPA conducted an inspection of Magellan's Coralville, Iowa terminal.  In the inspection, EPA determined that Coralville terminal did not comply with the SPCC regulations promulgated at 40 C.F.R. § 112 et seq. under Section 311(j) of the CWA in several respects including but not limited to:

      a.    management approval of the SPCC plan was not provided as required by 40 C.F.R. § 112.7;

      b.    the SPCC plan did not adequately predict the direction, rate of flow, and total quantity of oil which could be discharged from the facility as a result of each potential type of major equipment failure as required by 40 C.F.R. § 112.7(b);

      c.    the SPCC plan's description of the facility did not include maps that show above ground piping as required by 40 C.F.R. § 112.7(a)(3);

      d.    the SPCC plan did not indicate and require that all tanks at the facility were, as required by 40 C.F.R. § 112.8(c)(8), fail-safe engineered to avoid spills;

      e.    the SPCC plan did not, as required by 40 C.F.R. § 112.7(f)(2), identify a person at the facility who is accountable for discharge prevention; and

      f.    the SPCC plan did not, as required by 40 C.F.R. § 112.8(b)(3)-(4), indicate and require that all drainage systems from undiked areas flow into ponds, lagoons or catchment basins, designed to retain oil or return it to the facility or that the final discharge of all in-plant ditches be equipped with a diversion system that could in the event of an uncontrolled spill, return the oil to the plant.

68.     Under Section 311(b)(7)(C) of the CWA, 33 U.S.C. § 1321(b)(7)(C), Magellan is liable for civil penalties for the violations of the SPCC regulations set forth in paragraph 67

above in an amount up to $27,500 per day for each violation occurring between January 30, 1997 and March 15, 2004 and to $32,500 per day for each violation thereafter.

**Thirteenth Claim for Relief:**

**Civil Penalties under Section 311(b) of the CWA for Violations of SPCC Regulations at the Roca, Nebraska Terminal Facility**

69.     Paragraphs 1 through 68 are realleged and incorporated herein by reference.

70.     Magellan is the owner and operator of a bulk storage terminal in Roca, Nebraska.

71.     The Roca terminal has a capacity of 3,740,250 gallons and a spill from the Roca terminal could reasonably be expected to result in the discharge of oil to navigable waters and adjoining shorelines.

72.     EPA inspected the Roca Terminal on July 26, 2006 and determined that the Roca Terminal was not in compliance with SPCC regulations because documentation of management approval to implement the plan was not provided within the SPCC plan (as required by 40 C.F.R. § 112.7) and secondary containment for piping was not present, or alternatively, the impracticability for containment was not demonstrated by the facility's SPCC plan (as required by 40 C.F.R. § 112.7(c)-(d)).

73.     Under Section 311(b)(7)(C) of the CWA, 33 U.S.C. § 1321(b)(7)(C), Magellan is liable for civil penalties for the violations of the SPCC regulations set forth in Paragraph 72 above in an amount up to $27,500 per day for each violation occurring between January 30, 1997 and March 15, 2004 and to $32,500 per day for each violation thereafter.

**Fourteenth Claim for Relief:**

**Injunctive Relief under Section 309(b) of the CWA**

74.     Paragraphs 1 through 73 are realleged and incorporated herein by reference.

45.     The discharges described in this Complaint violated Section 301(a) of the CWA, 33 U.S.C. § 1311(a).  Defendant Magellan is subject to injunctive relief pursuant to Section 309(b) of the CWA, 33 U.S.C. § 1319(b), to undertake appropriate action to prevent further

-13-

discharges of oil from the Pipeline into waters of the United States, so as to achieve compliance with the CWA.

## VII.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A.  Impose civil penalties under the CWA on Defendant Magellan in an amount up to $1,100 per barrel of oil discharged for the eleven discharges of oil alleged in this Complaint;

B.  Impose civil penalties under the CWA on Defendant Magellan in an amount up to $27,500 per day for each violation of the SPCC regulations promulgated under Section 311(j) of the CWA occurring before and including March 15, 2004 and $32,500 per day per for each violation occurring thereafter.

C.  Issue an order pursuant to the CWA requiring Magellan to take all appropriate action to prevent future discharges of oil from the Pipeline into navigable waters of the United States;

D.  Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

RONALD J. TENPAS
Assistant Attorney General
Environment and Natural Resources Division
United States Department of Justice

ELIZABETH L. LOEB
Trial Attorney
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice
P.O. Box 7611
Washington, D.C.  20044-7611
Phone: 202/616-8916
Fax: 202/514-4180
Elizabeth.loeb@usdoj.gov

-14-

ERIC F. MELGREN
United States Attorney
District of Kansas

EMILY METZGER #10750
Assistant United States Attorney
United States Attorney's Office
District of Kansas
1200 Epic Center
301 N. Main Street
Wichita, KS 67202
(316) 269-6481

-15-